**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS BAYARINAS,** | : | **Civil No.  4:24-CV-1216** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff in this case, Thomas Bayarinas, argues that the administrative law judge (ALJ) in his case committed multiple errors in incorporating the limitations of the medical experts he found persuasive into his residual functional capacity (RFC) in compliance with the Social Security Regulations. Specifically, the plaintiff argues that, since the ALJ found the medical opinions limiting him to standing and/or walking for six hours in an eight-hour workday persuasive, the ALJ

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was required to include separate limitations regarding his ability to stand and walk in the RFC. But our analysis of this narrow issue is confined by Third Circuit precedent holding that a limitation to light work can implicitly address sit/stand/walk limitations. Navas v. Comm'r of Soc. Sec., 289 F. App'x 555, 558 (3d Cir. 2008) (rejecting a claimant's argument that the ALJ failed to define her sitting, standing, and walking limitations, stating "by finding that Navas could perform light work, the ALJ implicitly found that she could work at a job that involves 'a good deal of walking or standing,' or a job that 'involves sitting most of the time with some pushing and pulling of arm or leg controls.")

Our analysis of this case is further cabined by the standard of review in Social Security cases, which is limited by the Supreme Court's mandate that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.

> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Under this standard of review, we are obliged to affirm the decision of the administrative law judge (ALJ) once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).

Mindful of these paradigms, while we do not foreclose the possibility that courts could find differently based on the facts of an individual case, we decline to conclude as a matter of law that, particularly where there is substantial evidence that a plaintiff can meet the sit/stand/walk requirements of light work, the RFC must also include additional, specific limitations on these activities. Accordingly, after a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

II.    **Statement of Facts and of the Case**

A. **Background**

The administrative record of Bayarinas' disability application reveals the following essential facts: On July 25, 2022, Bayarinas applied for benefits under Titles II and XVI of the Social Security Act, alleging an onset of disability beginning March 11, 2022. (Tr. 28).  According to Bayarinas, he was completely disabled due to the combined effects of retrolisthesis at C5-C6, multilevel degenerative disc disease, intervertebral disc height loss at C5-C6, left arm nerve damage, and right neural foraminal narrowing at C3-C4 and C5-C6. (Tr. 94). Bayarinas was born on December 28, 1971, and was fifty years old on his alleged disability onset date, which is defined as a person closely approaching advanced age under the Commissioner's regulations. (Id.) He has a high school education and previously worked as a police officer. (Tr. 35-36).

As evidenced by his disability application, function report, and his hearing testimony, Bayarinas' main issue was with pain and limited mobility in his neck. He testified that he injured his neck in a car accident at work after a tractor trailer t-boned his vehicle. (Tr. 52, 345, 348, 366). He also reported that he could not lift both arms over his head and had trouble with his left hand. (Id.)

With regard to his ability to stand and walk, there is evidence of arthritis in his knee and a history of left knee arthroscopy partial medial meniscectomy in 2021, (Tr. 683-84), but the medical evidence and his statements varied greatly regarding the limiting effects of this impairment. As the ALJ summarized:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because treatment records do not corroborate all of his subjective complaints, particularly in regard to his left knee. In September 2022, the claimant did not report any problems standing or walking and he reported he could walk 2 to 3 miles before needing to stop (Exhibit 6E). At Exhibit 8E, which the claimant submitted in December 2022, the claimant reported extreme problems with his left knee, which he reiterated at his function report at Exhibit 11F. Since xrays support the claimant has degenerative joint disease of his left knee and since the claimant is obese, the undersigned carefully looked through treatment records following September 2022 regarding his left knee.

> Exhibit 5F/21-22 incidentally noted that the claimant walked independently in October 2022 and that he had a normal gait and station. Exhibit 6F/55 notes normal gait and station in January 2023 which do not support the claimant's report of extreme limitations with his left knee in December 2022. Although Exhibit 7F is prior to September 2022, Exhibit 7F contains VA records regarding the claimant's left knee, including when he received a gel injections [sic] in April 2022. In April 2022, the claimant reported that gel injections largely controlled his symptoms, he used a knee brace to help with pain and to improve functioning and xrays showed advanced arthritic changes. Exhibit 7F/10, which is also from 2022, noted the claimant was a healthy appearing fit male in no apparent distress, with a normal independent gait, full range of knee motion with crepitus when examined, and he should continue to use a Donjoy brace for high demand activities (Exhibit 7F). Exhibit 7F/22 et. seq. contains VA records regarding his service connected disability for his knee.

5

Exhibit 8F contains records from February 2023 noting a normal gait and station and that the claimant ambulated normally. Exhibit 9F contains records from April 2023 noting chronic pain in the claimant's neck, left arm, and left knee and th[at] he has severe cervical degenerative disc disease. This medical report noted the claimant could perform his activities of daily living; when examined, he walked independently in spite of his reported knee pain and his gait and station were normal (Exhibit 9F). Exhibit 9F/9 noted a steady gait with ambulation. Exhibit 10F/4 from July 2023 noted knee pain, the claimant ambulated effectively and he had a normal gait and station.

The claimant underwent a general annual exam with his primary care provider in February 2023. The claimant reported no general concerns; of specific note is that the claimant did not report knee pain despite his statement at Exhibits 8E and 11E regarding extreme knee pain. This general annual exam from February 2023 noted that the claimant advised he was moderately active. The claimant reported neck pain and stiffness. All musculoskeletal findings in this exam note dealt with the claimant's neck. There were not abnormal findings regarding the claimant's knees noted in the musculoskeletal findings. Exhibit 12F/16n which is from February 2023 indicated the claimant engaged in strenuous activity 90 minutes a day, 7 days a week. Exhibit 13F has records from July 2023 noting a normal gait and station and the claimant walked independently.

(Tr. 52-53).

Thus, clearly the plaintiff's ability to stand and walk was effected by the arthritis and degenerative joint disease in his left knee, however the longitudinal medical record reflects the degree to which he was limited by this impairment was often minimal in that he complained of pain in his knee, but examination findings

overall showed his gait was normal and he experienced relief from gel injections and the use of a brace.

Given this clinical picture, two State agency consultants opined on Bayarinas' ability to perform work-related activities with his impairments. At the initial level, in November 2022, osteopath Dr. Toni Jo Parmelee opined that Bayarinas was capable of performing light work based on the seven strength factors of the physical RFC (lifting/carrying, walking, sitting, pushing, and pulling). (Tr. 106). Specifically, Dr. Parmelee opined that Bayarinas could stand and/or walk for a total of about six hours and sit for a total of about six hours in an eight-hour workday but that he could never climb ladders/ropes/scaffolds and never crawl. (Tr. 104). On reconsideration, Dr. Gene Whang similarly opined that Bayarinas was capable of performing light work despite his impairments and that he could stand and/or walk and sit for a total of six hours in an eight-hour workday and never climb ladders/ropes/scaffolds or crawl but also opined that Bayarinas could only occasionally climb ramps/stairs, balance, stoop, kneel, or crouch. (Tr. 112-115). Notably, the parties point us to no other countervailing medical opinions.

It was against this medical background that Bayarinas' case came to be considered by the ALJ.

## B. **The ALJ Decision**

A hearing was conducted in Bayarinas' case on October 18, 2023, at which Bayarinas and a vocational expert testified. (Tr. 61-87). Following this hearing, on November 28, 2023, the ALJ issued a decision in Bayarinas' case. (Tr. 44-60). In that decision, the ALJ first concluded that Bayarinas met the insured requirements of the Act through December 31, 2027, and had not engaged in substantial gainful activity since the alleged onset date of March 11, 2022. (Tr. 49). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Bayarinas had the following severe impairments: carpal tunnel syndrome, degenerative disc disease, degenerative joint disease, left thumb trigger finger, and obesity. (Tr. 50). At Step 3, the ALJ determined that Bayarinas did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 51).

Between Steps 3 and 4, the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff which considered all of Bayarinas' impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: occasional postural movements except he should never climb ladders, ropes, scaffolds, or crawl, he is limited

to occasional overhead reaching bilaterally, occasional reaching in all directions with his left upper extremity, and he should avoid concentrated exposure to vibration.

(Tr. 51).

In fashioning this RFC, the ALJ considered the medical evidence, the expert opinions, and Bayarinas' self-described limitations. (Tr. 51-54). The ALJ first engaged in a two-step process to evaluate Bayarinas' alleged symptoms, finding that, although the plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 52).

In making this determination, the ALJ considered Bayarinas' statements and testimony regarding his impairments and limitations, noting:

> The claimant testified that he injured his neck when a tractor trailer t-boned his vehicle while working.  He testified his neck mobility is limited, he has had one major neck surgery, he continues to have range of motion issues following this surgery, he has neck pain, pain that radiates across his shoulders, and pain that goes down his left shoulder to his elbow, ring finger, and pinky. He testified regarding left thumb issues. He testified he cannot lift both arms over his head repetitively and he has trouble with his left hand.  He testified he cannot put his arms over his head.
>
> The claimant testified regarding his left knee.  He testified that he got gel injections from the VA about every 11 to 12 months.  He testified that there is a significant difference between the 2022 and 2023 left

9

> knee xrays, he now has bone on bone arthritis, and the VA has told him
> he needs left knee replacement. He testified his left knee affects his
> ability to climb stairs, walk, and sit (because he has to change position
> while sitting). The claimant testified he limits his lifting and carrying,
> his impairments affect his ability to sleep properly, and he has an
> electrical stimulation machine.

(Tr. 52).

The ALJ concluded that the previously summarized longitudinal medical evidence of record did not support his allegations concerning the intensity, persistence, and limiting effects of his symptoms, specifically addressing his knee impairment:

> The above records do not support extreme limitations with the
> claimant's left knee nor do they indicate that the state agency opinions
> at Exhibits 6A and 8A that the claimant could stand and/or walk about
> 6 hours in an 8 hour workday are incorrect. The state agency consultant
> noted that he took into account left knee degenerative joint disease and
> obesity when making his opinions (Exhibits 6A and 8A). In light of the
> above noted evidence and the state agency opinions at Exhibits 6A and
> 8A, the undersigned did not adopt in full the claimant's allegations
> regarding his left knee. The record does not support limitations in
> standing and walking that exceed those noted by the state agency
> consultant at Exhibits 6A and 8A. In light of the claimant's
> degenerative joint disease of the left knee and obesity, the above
> residual functional capacity contains several postural limitations.

(Tr. 53-54).

Finally, the ALJ considered the medical opinion evidence. The ALJ found the opinions of Dr. Parmelee generally persuasive and the opinions of Dr. Whang

10

fully persuasive, explaining that a number of their opinions were consistent with each other, and that, to the extent there were differences, the opinions of Dr. Whang were more persuasive given that he had a better longitudinal perspective of the case since he reviewed the file several months after Dr. Parmelee. (Tr. 54). Moreover, the ALJ specifically found Dr. Whang's opinions more persuasive since he had considered the limiting effects of Bayarinas' knee, including more limited postural abilities. (Id.)

Having made these findings, the ALJ concluded that Bayarinas could not perform any past relevant work, but that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Bayarinas could perform. (Tr. 54-55). Accordingly, the ALJ concluded Bayarinas had not been under a disability from the alleged onset date through the date of his decision. (Tr. 56).

This appeal followed. (Doc. 1). On appeal, Bayarinas argues that the ALJ failed to conduct a function-by-function assessment of his physical abilities with regard to his ability to sit, stand, and walk, and omitted relevant limitations assessed by the opinions of the mental consultants which he found persuasive resulting in an RFC that exceeds the limitations opined by these experts. In our view, the limitations assessed by the ALJ in the RFC largely comported with the opinions of the opining

experts. Moreover, under Third Circuit guidance, since both experts found Bayarinas was capable of standing and/or walking for six hours in an eight-hour day, the RFC limiting him to light work encompassed this sit/stand limitation and the ALJ was not required to include any further, additional specific sit/stand limitations in the RFC. Accordingly, finding that substantial evidence supported the ALJ's decision in this case, for the reasons set forth below, we will affirm the decision of the Commissioner.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.

Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal

requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic

view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

19

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were

20

broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting <u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

> Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. <u>See</u> <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); <u>Turner v. Colvin</u>, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); <u>Connors v. Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

## D. **<u>The ALJ's Decision is Supported by Substantial Evidence.</u>**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S.

23

at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Bayarinas retained the residual functional capacity to perform a range of light with some additional postural limitations. Therefore, we will affirm this decision.

The plaintiff argues that the ALJ erred in limiting him to light work without including any specific standing or walking limitations despite finding the stand/walk limitations to six hours per day persuasive. He argues that, in failing to include any standing or walking limitations within the RFC assessment, the ALJ failed to conduct the requisite function-by-function assessment required by SSR 96-8p. Essentially, despite the RFC fashioned by the ALJ largely reflecting the opinions of the State agency experts, and specifically addressing his knee impairment by adopting more limited postural activities, the plaintiff asks this Court to conclude, as a matter of law, that an RFC is deficient when it does not include specific limitations in standing and/or walking. This we cannot do.

In fact, the Third Circuit has rejected the argument that simply limiting a claimant to light work amounts to a failure to define sitting, standing, and walking limitations in terms of the RFC, but rather found that such a limitation implicitly addresses these functions. Navas v. Comm'r of Soc. Sec., 289 F. App'x 555, 558 (3d Cir. 2008) (rejecting a claimant's argument that the ALJ failed to define her sitting,

24

standing, and walking limitations, stating "by finding that Navas could perform light work, the ALJ implicitly found that she could work at a job that involves 'a good deal of walking or standing,' or a job that 'involves sitting most of the time with some pushing and pulling of arm or leg controls.'"). Indeed, this Court has affirmed decisions even where the ALJ did not discuss a claimant's ability to sit, stand, or walk individually. In a similar case, Magistrate Judge Arbuckle explained:

> Plaintiff argues that the ALJ's RFC assessment is deficient as a matter of law because it does not include a function-by-function assessment of Plaintiff's limitations. In particular she argues that, instead of separately setting out the individual limitations to Plaintiff's ability to sit, stand, and walk, the ALJ simply cites to the definition of "light" work. (Doc. 13, pp. 5-6). Plaintiff is correct that neither the RFC assessment itself nor the narrative discussion that follows discusses Plaintiff's ability to sit, stand, or walk individually. We are not, however, persuaded that this issue requires remand.
>
> It is well-established that although an ALJ's RFC assessment "must first identify an individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," an ALJ is not required to use particular language or adhere to a particular format in conducting that analysis. Instead, an ALJ is only required to provide "sufficient development of the record and explanation of [his or her] findings to permit meaningful review." This principle has been extended to issues like this one, where an ALJ articulated an RFC assessment in terms of an exertional category without discussing sitting, standing, or walking separately.

Danielle R. v. Kijakazi, No. 1:22-CV-1446, 2023 WL 6130588, at *8 (M.D. Pa. July 28, 2023), report and recommendation adopted sub nom. Riebling v. Kijakazi, No.

1:22-CV-01446, 2023 WL 6129498 (M.D. Pa. Sept. 19, 2023) (citing <u>Navas</u>, 289 F. at 558; <u>Johnny R. v. Kijakazi</u>, No. 2:20-CV-12818, 2023 WL 4073960, at *6 (D.N.J. June 20, 2023) (finding that an ALJ's RFC assessment limiting a claimant to sedentary work was effectively an assessment that the claimant could sit for up to six hours in an eight-hour workday, stand/walk for up to two hours in and eight-hour workday, and lift/carry up to ten pounds)).

Here, the ALJ found the opinions of Drs. Parmelee and Whang, that Bayarinas could stand and/or walk for a total of six hours in an eight-hour workday, persuasive. (Tr. 54). He then concluded that Bayarinas could perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but with some additional postural and environmental limitations. SSR 83-10 explains, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." <u>Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2</u>, SSR 83-10 (S.S.A. 1983). Thus, since the opinion evidence which the ALJ found persuasive did not include any more extreme or specific sitting, standing, or walking limitations than what is already included in the light work limitation, no more was needed here.

Nonetheless, the ALJ did discuss the plaintiff's ability to sit, stand, and walk throughout the RFC analysis. In fact, in finding the opinion of Dr. Whang more

persuasive than that of Dr. Parmelee, the ALJ noted, "Dr. Whang considered the limiting effects of the claimant's knee and his proposed opinions include that the claimant is more limited in his ability to climb ramps/stairs, balance, stoop, kneel, and crouch than Dr. Parmelee found (Exhibits 6A and 8A)." (Tr. 54). In fact, the ALJ incorporated these additional postural limitations in the RFC which limited him to only occasional postural movements except he should never climb ladders, ropes, scaffolds, or crawl. (Tr. 51).

More importantly, both of the opinions of record found Bayarinas was capable of standing and/or walking for a total of six hours in an eight-hour workday – limitations which are fully compatible and "implicitly addressed" in a light work RFC. And these opinions are supported by substantial evidence, where, as the ALJ noted, there is limited longitudinal evidence that Bayarinas' knee impairment significantly limited his ability to stand and/or walk. In our view, the plaintiff's argument may have resonance in cases where there is evidence of limitations in a claimant's ability to sit stand walk that were not addressed by the ALJ. But here, where there is no evidence of more extreme limitations, the plaintiff's argument exalts form over substance in a way that seems inconsistent with the deferential standard of review we are constrained to employ in these cases. There was no error here.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting de novo might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and affirm the decision of the Commissioner.

## IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

<u>s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED: September 3, 2025

28